1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| KEIRON ELIAS,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>C/O MIMAKI, et al.,<br><br>　　　　　　　Defendants. | Case No. 2:21-cv-06055-MWF-JC<br><br>ORDER DISMISSING SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND AND DIRECTING PLAINTIFF TO RESPOND TO ORDER |

11
12
13
14
15
16

## I.    INTRODUCTION

17

On July 27, 2021, Plaintiff Keiron Elias, who is in state custody, is

18

proceeding *pro se*, and has been granted leave to proceed without prepayment of

19

filing fees ("IFP"), filed a Civil Rights Complaint ("Original Complaint") based

20

on 42 U.S.C. § 1983 ("Section 1983"), among other grounds.  (Docket No. 1).

21

On November 11, 2021, this Court screened and dismissed the Original Complaint

22

with leave to amend.  (Docket No. 7).  Plaintiff then filed a First Amended

23

Complaint on April 26, 2022 (Docket No. 15), which the Court screened and

24

dismissed with leave to amend on June 29, 2023 (Docket No. 18).

25

On September 29, 2023, the Court granted a motion to stay the case because

26

Plaintiff had been moved to the county jail in connection with a pending

27
28

resentencing proceeding and had no access to her[1] case files and other materials related to this case. (See Docket Nos. 20-21). Plaintiff proceeded to file periodic status reports. (See Docket Nos. 23-25). On June 18, 2024, because Plaintiff had been returned to state custody at Richard J. Donovan Correctional Facility (RJD) and was again in possession of her files, and no further extension was warranted, the Court lifted the stay and ordered Plaintiff to respond by filing either a Second Amended Complaint, a voluntary notice of dismissal, or a notice of Plaintiff's intent to stand on the First Amended Complaint. (Docket No. 28).

On July 24, 2024, Plaintiff filed a Second Amended Complaint (alternatively, "SAC") against the following four Defendants at California State Prison, Los Angeles County ("CSP-LAC"), for violation of her First Amendment right to free exercise of religion and her Eighth Amendment rights to be free from cruel and unusual punishment, excessive force, and deliberate indifference to her serious medical needs:[2] (1) Correctional Officer ("C/O") Mimaki; (2) C/O Lichinov; (3) Lieutenant Johnson; and (4) Warden Hor[n].[3] (SAC at 3-5).[4] Defendants Mimaki, Lichinov, and Johnson are sued solely in their individual capacities, while Warden Horn is sued in his individual and official capacities. (SAC at 3-4). Plaintiff seeks monetary and injunctive relief. (SAC at 19-20, 23). ///

---

[1] As Plaintiff's recent filings employ female pronouns to refer to Plaintiff, the Court does so here as well.

[2] As noted below, the Second Amended Complaint also contains references to Plaintiff's rights under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 114 Stat. 803, 42 U.S.C. § 2000cc et seq., as well as her right to be free from retaliation. (See SAC at 3-4, 10-11, 13-14, 20-21).

[3] Plaintiff's references to "Warden Hor" are construed to refer to Pat Horn, a former warden of CSP-LAC.

[4] Citations to the Second Amended Complaint and its attachments refer to the page numbers from the Court's official Case Management/Electronic Case Filing (CM/ECF) system.

1    As the Second Amended Complaint is deficient in multiple respects,

2    including those detailed below, it is dismissed with leave to amend.

3    **II.    THE SECOND AMENDED COMPLAINT**

4    The Second Amended Complaint, construed liberally, alleges the following:

5    Plaintiff's religious beliefs are "rooted in being God in flesh, with absolute

6    free will." (SAC at 13 (some capitalization omitted)).  Plaintiff has "declared her

7    rights to live under the power, protection, and authority of GOD and GOD alone in

8    order to live in peace and [e]nsure her spiritual, mental and physical safety without

9    reprimand," so that she can reduce her severe depression and risk of suicide.

10    (SAC at 6).  Plaintiff has placed a $5 million liability on any violation of her

11    "religious and mental peace in treatment of her severe depression," and the prison

12    staff has all been informed of this.  (SAC at 6, 17).

13    On July 20, 2019, Defendants C/O Lichinov and C/O Mimaki ordered

14    Plaintiff to surrender an extra food tray that Plaintiff had taken in the dining hall,

15    but Plaintiff refused to do so.  (See SAC at 3, 5-7).  There was allegedly no rule

16    preventing inmates from receiving an extra food tray in these circumstances.

17    (SAC at 9-10).  Plaintiff also told Defendants that "receiving food charity" is an

18    exercise of her religious beliefs and "free will, as God." (SAC at 8).  Plaintiff

19    assertedly "exercises her belief 24 [hours] a day[,] in that [e]verything [she]

20    possesses[] belongs to [her] because it serves [her] will as God." (SAC at 9).

21    Defendants were thus forcing Plaintiff to choose between obedience to their order

22    to give back the tray and obedience "to God within herself." (SAC at 12).

23    When Plaintiff refused to obey their orders, Defendants C/O Lichinov and

24    C/O Mimaki, without warning, snatched away the food tray, "slammed" Plaintiff

25    into a steel table," handcuffed her, and placed her in a 3' by 3' cage.  (SAC at 7).

26    Defendants then forced Plaintiff to submit to a strip search.  (SAC at 10).  Plaintiff

27    refused because it "violates [her] belief to get naked in front of men," and she told

28    Defendant Lichinov to use a body scanner or bring her to a medical nurse to

conduct the search. (SAC at 10). But Lichinov told Plaintiff that she would remain in the cage and receive an "additional write up for delaying a peace officer" unless she submitted to the search. (SAC at 10, 15). To avoid further punishment, Plaintiff "for[went] her religious belief and exercise" and complied with the officers' order. (SAC at 15). When conducting the strip search, Defendants Lichinov and Mimaki "humiliated" Plaintiff and her beliefs by laughing while making rude comments. (SAC at 15). At one point, Mimaki said, "Some God you are; now bend over and spread your cheeks," and Lichinov continued, "yeah God, spreadum [sic]." (SAC at 16).

This incident was allegedly the second time that Lichinov had "slammed [Plaintiff] into something steel" and "strip searched her against her beliefs." (SAC at 10). Plaintiff assertedly "believ[es] Lichinov's motive for bothering [Plaintiff] about the tray was to incite the incident in order to punish [her] in retaliation" for her recent filing of a grievance and civil complaint against Lichinov. (SAC at 11).

Defendants Lichinov and Mimaki also cited Plaintiff for a rule violation purportedly "not for the extra tray, but for disrespect with the potential for violence," even though such behavior is contrary to Plaintiff's belief in peace. (SAC at 11). Defendant Lt. Johnson held the disciplinary hearing on the matter, at which Plaintiff gave a "thorough" explanation about how Mimaki and Lichinov's actions were "unjustified and unreasonable." (SAC at 11). She told Lt. Johnson that she had not violated any rule, and her "refusal to give back the tray was in exercise of [her] religious belief BEING God." (SAC at 11). But Lt. Johnson found Plaintiff guilty of the rule violation, nonetheless, and punished her with a loss of thirty days of good-time credits and forty-five days of access to the dayroom, among other privileges, which caused Plaintiff further psychological distress. (SAC at 12-13).

///

///

4

1 **III.    PERTINENT LAW**

2       **A.    The Screening Requirement**

3       As Plaintiff is a prisoner proceeding IFP on a civil rights complaint against

4 governmental defendants, the Court must screen the Second Amended Complaint,

5 and is required to dismiss the case at any time it concludes the action is frivolous

6 or malicious, fails to state a claim on which relief may be granted, or seeks

7 monetary relief against a defendant who is immune from such relief.  See 28

8 U.S.C. §§ 1915(e)(2)(B), 1915A; 42 U.S.C. § 1997e(c); Byrd v. Phoenix Police

9 Dep't, 885 F.3d 639, 641 (9th Cir. 2018) (citations omitted).

10       When screening a complaint to determine whether it states any claim that is

11 viable, the Court applies the same standard as it would when evaluating a motion

12 to dismiss under Federal Rule of Civil Procedure 12(b)(6).  See Rosati v. Igbinoso,

13 791 F.3d 1037, 1039 (9th Cir. 2015) (citation omitted).  Rule 12(b)(6), in turn, is

14 read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure.

15 Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013).  Under Rule 8, each

16 complaint filed in federal court must contain a "short and plain statement of the

17 claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While

18 Rule 8 does not require detailed factual allegations, at a minimum a complaint

19 must allege enough specific facts to provide *both* "fair notice" of the particular

20 claim being asserted *and* "the grounds upon which [that claim] rests."  Bell

21 Atlantic Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007) (citation and

22 quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

23 (Rule 8 pleading standard "demands more than an unadorned, the-defendant-

24 unlawfully-harmed-me accusation" (citing Twombly, 550 U.S. at 555)).

25       To avoid dismissal on screening, a complaint must "contain sufficient

26 factual matter, accepted as true, to state a claim to relief that is plausible on its

27 face."  Byrd, 885 F.3d at 642 (citations omitted); see also Johnson v. City of

28 Shelby, 574 U.S. 10, 12 (2014) (per curiam) (Twombly and Iqbal instruct that

plaintiff "must plead facts sufficient to show that [plaintiff's] claim has substantive plausibility"). A claim is "plausible" when the facts alleged in the complaint would support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. Iqbal, 556 U.S. at 678 (citation omitted); see also Keates v. Koile, 883 F.3d 1228, 1242 (9th Cir. 2018) ("[A] [Section 1983] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") (quoting Iqbal, 556 U.S. at 676); Gauvin v. Trombatore, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (complaint "must allege the basis of [plaintiff's] claim against *each* defendant" to satisfy Rule 8 requirements (emphasis added)). Allegations that are "merely consistent with" a defendant's liability, or reflect only "the mere possibility of misconduct" do not "show[] that the pleader is entitled to relief" (as required by Fed. R. Civ. P. 8(a)(2)), and thus are insufficient to state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678-79 (citations and quotation marks omitted).

At this preliminary stage, "well-pleaded factual allegations" in a complaint are assumed true, while "[t]hreadbare recitals of the elements of a cause of action" and "legal conclusion[s] couched as a factual allegation" are not. Id. (citation and quotation marks omitted); Jackson v. Barnes, 749 F.3d 755, 763 (9th Cir. 2014) ("mere legal conclusions 'are not entitled to the assumption of truth'" (quoting Iqbal, 556 U.S. at 678-79)), cert. denied, 574 U.S. 1077 (2015). In addition, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998) (citation omitted), and "need not [] accept as true allegations that contradict matters properly subject to judicial notice or by exhibit," Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001) (citation omitted).

In general, civil rights complaints are interpreted liberally in order to give *pro se* plaintiffs "the benefit of any doubt." Byrd, 885 F.3d at 642 (citations and internal quotation marks omitted). Nonetheless, a *pro se* plaintiff must still follow the rules of procedure that govern all litigants in federal court, including the Rule 8 requirement that a complaint minimally state a short and plain statement of a claim that is plausible on its face. See Ghazali v. Moran, 46 F.3d 52, 54 (9th Cir. 1995) (per curiam) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure." (citation omitted)), cert. denied, 516 U.S. 838 (1995); see also Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 954 (9th Cir. 2011) (en banc) ("[A] liberal interpretation of a . . . civil rights complaint may not supply essential elements of [a] claim that were not initially pled." (quoting Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992)) (quotation marks omitted; ellipses in original)).

If a *pro se* complaint is dismissed for failure to state a claim, the court must "freely" grant leave to amend. Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) (citation omitted); Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc) (citations and internal quotation marks omitted). Nonetheless, courts have the discretion to deny leave to amend in cases of undue delay, bad faith, undue prejudice to the opposing party, "repeated failure to cure deficiencies by amendments previously allowed," and futility. See Foman v. Davis, 371 U.S. 178, 182 (1962); Cafasso, 637 F.3d at 1058 (citations omitted). Courts have "particularly broad" discretion where a plaintiff "has previously amended the complaint." Cafasso, 637 F.3d at 1058 (citation and quotation marks omitted); see also Griggs v. Pace Am. Grp., Inc., 170 F.3d 877, 879 (9th Cir. 1999) ("The trial court's discretion . . . is particularly broad where . . . a plaintiff previously has been granted leave to amend." (citations omitted)).

///

///

1

### B.    Section 1983 Claims

2    To state a Section 1983 claim, a complaint must allege that a defendant,

3    while acting under color of state law, caused a deprivation of the plaintiff's federal

4    rights.  42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988) (citations

5    omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted).

6    There is no vicarious liability in Section 1983 lawsuits.  Iqbal, 556 U.S. at 676.

7    (citing, *inter alia*, Monell v. Dep't of Soc. Servs. of the City of N.Y., 436 U.S.

8    658, 691 (1978)).  Hence, a government official may not be held liable under

9    Section 1983 unless the particular official's own actions caused the alleged

10    constitutional deprivation.  OSU Student Alliance v. Ray, 699 F.3d 1053, 1069

11    (9th Cir. 2012) (citing Iqbal, 556 U.S. at 676), cert. denied, 571 U.S. 819 (2013).

12    A Section 1983 plaintiff must establish both causation-in-fact and proximate (*i.e.*,

13    legal) causation.  See Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th

14    Cir. 2008).  Allegations regarding Section 1983 causation "must be individualized

15    and focus on the duties and responsibilities of each individual defendant whose

16    acts or omissions are alleged to have caused a constitutional deprivation."  Leer v.

17    Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted).  "Sweeping

18    conclusory allegations [regarding causation] will not suffice . . . ."  Id. (citation

19    omitted).

20    An individual "causes" a constitutional deprivation basically when he

21    (1) "does an affirmative act, participates in another's affirmative acts, or omits to

22    perform an act which he is legally required to do that causes the deprivation"; or

23    (2) "set[s] in motion a series of acts by others which the [defendant] knows or

24    reasonably should know would cause others to inflict the constitutional injury."

25    Lacey v. Maricopa County, 693 F.3d 896, 915 (9th Cir. 2012) (en banc) (quoting

26    Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)) (quotation marks

27    omitted).

28    ///

8

Similarly, a government official acting in a supervisory capacity "causes" a deprivation to the extent he (1) personally participates in or directs a subordinate's constitutional violation; or (2) was not "physically present when the [plaintiff's] injury occurred," but the constitutional deprivation can, nonetheless, be "directly attributed" to the supervisor's own wrongful conduct.  Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011), cert. denied 566 U.S. 982 (2012); see also OSU Student Alliance, 699 F.3d at 1069 (citing Iqbal, 556 U.S. at 676).  Under the latter theory, even absent "overt personal participation," a supervisor may be liable under Section 1983 if he created, promulgated, implemented, advanced, or was otherwise responsible for the continued operation of a policy that "requires subordinates to commit constitutional violations," and enforcement of the policy (either by the defendant-supervisor or his subordinates) proximately caused the plaintiff's constitutional injury.  OSU Student Alliance, 699 F.3d at 1076 (citing Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010), cert. denied, 563 U.S. 960 (2011)); see also Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013) (supervisory officials may be held liable "even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of a constitutional violation'" (citation and internal quotation marks omitted)).

## IV.    DISCUSSION

The Second Amended Complaint is deficient in multiple respects, including those detailed below.

### A.    The Second Amended Complaint Violates Rules 8 and 10 of the Federal Rules of Civil Procedure

Rule 8(a), as noted above, requires a complaint to provide "fair notice" of who is being sued, for what particular conduct, and in what particular claim.  See Twombly, 550 U.S. at 555 & n.3 (Rule 8(a) requires a complaint to give "fair

notice" of the particular claims being asserted against them and "the grounds upon which [the claims] rest[]") (citation and quotation marks omitted); <u>McHenry v. Renne</u>, 84 F.3d 1172, 1177 (9th Cir. 1996) (purpose of Rule 8(a) is to ensure that a complaint "fully sets forth who is being sued, for what relief, and on what theory, with enough detail to guide discovery"); <u>see also</u> <u>Cafasso</u>, 637 F.3d at 1058 (a complaint violates Rule 8 if a defendant would have difficulty understanding and responding to the complaint).

Plaintiff's Second Amended Complaint violates this rule because it fails to give Defendants sufficient notice of the claims being asserted against them. For example, although Plaintiff appears to indicate that her only claims are for violation of her First Amendment right to free exercise of religion and her Eighth Amendment rights to be free from excessive force and deliberate indifference (<u>see</u> SAC at 5), the Second Amended Complaint later makes several references to her religious rights under RLUIPA, 42 U.S.C. § 2000cc <u>et seq.</u>, and her right to be free from retaliation (<u>see</u> SAC at 3-4, 10-11), making it unclear whether Plaintiff intends to assert independent claims on these grounds.[5] Moreover, while Plaintiff lists Warden Horn (erroneously named "Hor") as a Defendant being sued in his individual and official capacities (SAC at 4), the only subsequent reference to Warden Horn occurs near the end of the Second Amended Complaint, where Plaintiff states only that Warden Horn "is sued in his official capacity under RLUIPA" for "injunctive relief from the RVR and restoration of credits."[6] (SAC

---

[5]As discussed below, Plaintiff's allegations fail to demonstrate violations of these rights.

[6]On this point, Plaintiff correctly acknowledges that only prospective injunctive relief is available under RLUIPA, and such relief cannot be sought against officers sued in their individual capacities. <u>See</u> <u>Wood v. Yordy</u>, 753 F.3d 899, 904 (9th Cir. 2014) (RLUIPA "does not authorize suits against a person in anything other than an official or governmental capacity"); <u>Cochran v. Sherman</u>, 2017 WL 1022789, at *4 (E.D. Cal. Mar. 16, 2017) ("RLUIPA only authorizes official capacity suits against governmental employees for prospective, injunctive relief." (citations omitted)).

1    at 20). It is therefore unclear on what grounds, or for what conduct, Plaintiff

2    intends to sue Warden Horn in his individual capacity.[7]

3        The Second Amended Complaint also violations Rule 10(a), which requires

4    that "all the parties" be named in the caption of a complaint. Fed. R. Civ. P. 10(a)

5    ("Caption; Names of Parties. . . . [T]he title of the complaint must name all the

6    parties"). The caption of Plaintiff's Second Amended Complaint names only

7    Defendants Mimaki, Lichinov, and Lt. Johnson, not Warden Horn, despite that

8    Horn is listed as a Defendant within the Second Amended Complaint. (See Comp.

9    at 1, 3-4).

10       Accordingly, the Second Amended Complaint warrants dismissal with leave

11   to amend for violation of Rules 8(a) and 10(a) of the Federal Rules of Civil

12   Procedure. See McHenry, 84 F.3d at 1178-80 (affirming dismissal of complaint

13   for violation of Rule 8 where "one cannot determine from the complaint who is

14   being sued, for what relief, and on what theory, with enough detail to guide

15   discovery"); Ferdik v. Bonzelet, 963 F.2d 1258, 1263 (9th Cir.), as amended (May

16   22, 1992) (affirming dismissal of action based on failure to comply with court

17   order that complaint be amended to name all defendants in caption as required by

18   Rule 10(a)), cert. denied, 506 U.S. 915 (1992).

19   **B.    The Second Amended Complaint Fails to State a Claim for**

20   **       Violation of Plaintiff's Religious Rights Under the First**

21   **       Amendment or RLUIPA**

22       Prisoners "retain protections afforded by the First Amendment" including

23   the right to "the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S.

24   342, 348 (1987) (citations omitted), superseded by statute on other grounds, 42

25   U.S.C. §§ 2000cc, et seq. However, as a consequence of incarceration, a

26

27       [7]As indicated above, supervisory officials such as Warden Horn cannot be held liable in
     their individual capacities unless they personally caused a violation of Plaintiff's rights in some
28   respect. See Starr v. Baca, 652 F.3d at 1207.

                                            11

1    prisoner's First Amendment rights are necessarily "more limited in scope than the

2    constitutional rights held by individuals in society at large." <u>Shaw v. Murphy</u>, 532

3    U.S. 223, 229 (2001).  An inmate retains only "those First Amendment rights that

4    are not inconsistent with his status as a prisoner or with the legitimate penological

5    objectives of the corrections system." <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974).

6         To state a First Amendment free exercise claim, an inmate must allege that a

7    prison official's actions (1) "substantially burden[ed]" the inmate's exercise of a

8    sincerely held religious belief; and (2) did so in an unreasonable manner – *i.e.*, the

9    official's actions were not "rationally related to legitimate penological interests."

10   <u>See</u> <u>O'Lone</u>, 482 U.S. at 348-50; <u>Jones v. Williams</u>, 791 F.3d 1023, 1031, 1033

11   (9th Cir. 2015) (citation omitted); <u>Shakur v. Schriro</u>, 514 F.3d 878, 884-85 (9th

12   Cir. 2008) (citations omitted).  "[G]overnment action places a substantial burden

13   on an individual's right to free exercise of religion when it tends to coerce the

14   individual to forego [his or] her sincerely held religious beliefs or to engage in

15   conduct that violates those beliefs." <u>Jones v. Williams</u>, 791 F.3d at 1031-33

16   (citations omitted).

17        Here, Plaintiff claims Defendants violated her First Amendment free

18   exercise rights in part by punishing her for refusing to give back the second meal

19   tray despite that her religious beliefs permit her to accept food in "charity" and

20   forbid her to obey anyone other than herself, who is "God."  (<u>See</u> SAC at 8-9, 11-

21   12, 15).  However, first, Plaintiff does not plausibly allege that her religious belief

22   in "possess[ing] and receiv[ing] meals in charity" (SAC at 15) was substantially

23   burdened by having to give up the second tray.  Moreover, to the extent that

24   Plaintiff's religious beliefs generally forbid her to obey officers' orders, such

25   beliefs are clearly incompatible with the officers' strong, legitimate penological

26   interest in requiring inmates to obey their orders and in punishing inmates' failure

27   to do so, which is essential to maintaining order and security in the prison.

28   Plaintiff's belief in obeying only God, or "God in herself," must yield to that

interest, at least where, as here, the orders at issue do not seem to have posed any direct conflict with, or substantial burden on, Plaintiff's religious practice.

Plaintiff also claims that her right to religious free exercise was violated when Defendants Mimaki and Lichinov coerced her to submit to a strip search. (See SAC at 5, 10-11, 16). However, Plaintiff's vague, conclusory assertion that the search "violate[d] [her] belief to get naked in front of men" (SAC at 10) does not plausibly show that the search actually conflicted with – and substantially burdened – a belief that was "sincerely held" and "rooted in religious belief." See Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994) (for First Amendment claim, belief "must be sincerely held" and "must be rooted in religious belief, not in 'purely secular' philosophical concerns" (citations omitted)); see also White v. Davenport, 2024 WL 5237438, at *6 (C.D. Cal. Nov. 13, 2024) ("While courts will not second-guess the reasonableness of a plaintiff's assertion that a requirement conflicts with her religious beliefs, a plaintiff still must allege what the conflict is." (citing Bolden-Hardge v. Office of Cal. State Controller, 63 F.4th 1215, 1223 (9th Cir. 2023))), report and recommendation adopted, 2025 WL 268850 (C.D. Cal. Jan. 22, 2025). Plaintiff also does not demonstrate a substantial burden based on Defendants' verbal insults during the search regarding Plaintiff's belief that she is "God." (SAC at 16).

Accordingly, the Second Amended Complaint fails to state a First Amendment free exercise claim. See O'Lone, 482 U.S. at 348-50. Plaintiff also fails to state a claim under RLUIPA, which similarly requires pleading a substantial burden on her religious exercise.[8] See Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir. 2005) (under RLUIPA, plaintiff bears initial burden to demonstrate that defendant's actions substantially burden the exercise of his

_____

[8]Although unclear, it appears that Plaintiff's RLUIPA claim is predicated solely on the tray incident and subsequent disciplinary sanctions, not the strip search. (See SAC at 13-14, 20).

13

1   religious beliefs (citing 42 U.S.C. § 2000cc-2(b)).   In sum, Plaintiff's allegations
2   do not establish a substantial burden, or a "significantly great restriction or onus
3   upon [religious] exercise," to support a violation of her religious rights under
4   RLUIPA or the First Amendment.   New Harvest Christian Fellowship v. City of
5   Salinas, 29 F.4th 596, 602 (9th Cir. 2022), cert. denied, 143 S. Ct. 567 (2023).

6              **C.    The Second Amended Complaint Fails to State a First**
7                       **Amendment Retaliation Claim**

8           "Prisoners have a First Amendment right to file grievances against prison
9   officials . . . ."   Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citation
10  omitted).  Retaliation against a prisoner for exercising his First Amendment right
11  to seek redress/access the court is an independent constitutional violation.
12  Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).  To prevail on a First
13  Amendment retaliation claim, an inmate must prove that (1) the plaintiff/inmate
14  engaged in conduct that is protected under the First Amendment; (2) a prison
15  official took "adverse action" against the inmate; (3) the inmate's protected
16  conduct was the "substantial or motivating factor" behind the prison official's
17  action; (4) the official's retaliatory action "would chill or silence a person of
18  ordinary firmness from future First Amendment activities"; and (5) the action "did
19  not advance legitimate goals of the correctional institution" because it was either
20  "arbitrary and capricious" or "unnecessary to the maintenance of order in the
21  institution."   Watison, 668 F.3d at 1114-15 (citations and internal quotation marks
22  omitted).  A complaint that does not allege a "chilling effect" may still state a
23  viable retaliation claim if it alleges that the plaintiff "suffered some other harm . . .
24  that is more than minimal. . . ."   Id. at 1114 (citations and internal quotation marks
25  omitted).

26          To satisfy the causation element of a First Amendment retaliation claim, an
27  inmate/plaintiff must demonstrate that there was a specific causal link between the
28  defendant's alleged retaliatory conduct and the inmate's exercise of a

                                            14

constitutional right.  See generally Hartman v. Moore, 547 U.S. 250, 259 (2006) (citations omitted); Pratt v. Rowland, 65 F.3d 802, 807-08 (9th Cir. 1995).  A plaintiff may do so either with direct evidence of a defendant's retaliatory motive, or with circumstantial evidence of the defendant's knowledge of the protected conduct at issue *plus* some other evidence probative of retaliatory intent, such as "(1) proximity in time between protected speech and the alleged retaliation; (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse . . . action were false and pretextual."  McCollum v. Cal. Dep't of Corr. &  Rehab., 647 F.3d 870, 882 (9th Cir. 2011) (citation and quotation marks omitted; alterations in original); see generally Watison, 668 F.3d at 1114 (direct evidence of retaliatory intent "rarely" available).

Here, to the extent that Plaintiff intends to assert a First Amendment retaliation claim, such claim fails at least because Plaintiff's allegations do not establish causation.  Plaintiff asserts that she "believ[es] Lichinov's motive for bothering [Plaintiff] about the tray was to incite the incident in order to punish [her] in retaliation" for Plaintiff's filing of a grievance and civil complaint against Lachinov thirty days earlier.  (SAC at 11, 20).  However, absent any facts to suggest that Defendant actually knew about Plaintiff's protected conduct, the alleged thirty-day proximity is insufficient to raise a plausible inference that the protected conduct was a "substantial or motivating factor" behind any Defendant's actions against her.

## D.    The Second Amended Complaint Fails to State an Eighth Amendment Claim

The Eighth Amendment prohibits "the infliction of cruel and unusual punishments on those convicted of crimes."  Wilson v. Seiter, 501 U.S. 294, 296-97 (1991) (citation and internal quotation marks omitted).  "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and

unusual punishment forbidden by the Eighth Amendment." <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986) (citation and internal quotation marks omitted); <u>Hope v. Pelzer</u>, 536 U.S. 730, 737 (2002).  "The alleged pain may be physical or psychological.  Nevertheless, the inmate must objectively show that he was deprived of something sufficiently serious." <u>Watison</u>, 668 F.3d at 1112 (internal quotations and citations omitted).  "[N]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 38 (2010) (per curiam) (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992)).

Prison officials also violate the Eighth Amendment when they respond with deliberate indifference to an inmate's serious medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97, 103-05 (1976) (citations and footnotes omitted).  A prison official violates the Eighth Amendment when:  (1) an inmate is incarcerated under conditions posing a substantial risk of serious harm; and (2) the prison official deliberately disregards the risk by failing to take reasonable measures to abate it. <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994); <u>Hearns v. Terhune</u>, 413 F.3d 1036, 1040-42 (9th Cir. 2005).  Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." <u>Farmer</u>, 511 U.S. at 837.  "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." <u>Gibson v. County of Washoe</u>, 290 F.3d 1175, 1188 (9th Cir. 2002) (citation omitted), <u>cert. denied</u>, 537 U.S. 1106 (2003), <u>overruled in part on other grounds by</u> <u>Castro v. County of Los Angeles</u>, 833 F.3d 1060, 1076 (9th Cir. 2016) (en banc), <u>cert. denied</u>, 580 U.S. 1099 (2017).  Mistake, negligence, or malpractice does not establish deliberate indifference to serious medical needs. <u>Estelle</u>, 429 U.S. at 105-06.

Here, Plaintiff claims that Defendants violated the Eighth Amendment by punishing her for refusing to give up her extra meal tray, "slamm[ing]" her into a

steel table, and subjecting her to a strip search.  (See SAC at 3, 5, 7, 16-19).
Plaintiff fails to demonstrate an Eighth Amendment violation on any of these
grounds.

First, although Plaintiff alleges that she suffered from depression and
suicide attempts and had informed Defendants about her condition and her
religious and mental health needs generally (see SAC at 6, 17), she fails to
plausibly allege that Defendants were deliberately indifferent to such harm.  In
particular, Plaintiff fails to show that any of the Defendants, even when informed
of Plaintiff's condition, would have known that their own respective alleged
conduct might pose a substantial risk of serious harm within the circumstances at
issue.  Cf. Simmons v. Navajo County, 609 F.3d 1011, 1018 (9th Cir. 2010)
(claims of deliberate indifference in prison suicide cases require allegations that
specific Defendant actually knew that the inmate was "in substantial danger" of
"*imminent* suicide[]" and deliberately failed to take reasonable precautionary
measures (emphasis in original; citation and quotation marks omitted), overruled
in part on other grounds by Castro, 833 F.3d 1060); see also, e.g., Madrid v.
Gomez, 889 F. Supp. 1146, 1264 (N.D. Cal. 1995) ("The Eighth Amendment
simply does not guarantee that inmates will not suffer some psychological effects
from incarceration or segregation.").  This includes Defendants' alleged actions in
taking away Plaintiff's second meal tray and subjecting her to disciplinary
sanctions such as the temporary loss of dayroom access and other privileges,
which allegedly caused Plaintiff "mental anguish" and psychological distress.
(See SAC at 17-19).

Second, Plaintiff fails to show that Defendants Mimaki and Lichinov used
excessive force when confronting Plaintiff about the extra tray.  "[W]henever
prison officials stand accused of using excessive physical force in violation of the
Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether
force was applied in a good-faith effort to maintain or restore discipline, or

maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7.  Plaintiff alleges that when she was ordered to give up the extra tray, she refused to do so, and Mimaki and Lichinov responded by "snatch[ing] the trays out of [Plaintiff's] hands, put[ting] them down and then grabb[ing]" Plaintiff and "slamm[ing] [her] on a steel table dazzing [sic]" her and "forc[ing] [her] into handcuffs . . . ." (SAC at 6-7).  Without more, these facts do not demonstrate that Defendants acted "maliciously or sadistically to cause harm" in the circumstances.

Third, subjecting inmates to strip searches generally does not rise to an Eighth Amendment violation, particularly where, as here, Plaintiff does not allege that any force or touching was applied in the process.  See, e.g., Somers v. Thurman, 109 F.3d 614, 622-24 (9th Cir.) (cross-gender visual body cavity searches of male inmates, as well as watching the inmate shower, not objectively harmful enough to serve as basis of Eighth Amendment claim), cert. denied, 522 U.S. 852 (1997); Foster v. Triplett, 2019 WL 452683, at *6 (C.D. Cal. Jan. 3, 2019) (weekly strip searches did not violate the Eighth Amendment where plaintiff did not allege any facts suggesting that the strip searches, in themselves, were so egregiously harmful as to violate the Eighth Amendment), report and recommendation adopted, 2019 WL 450671 (C.D. Cal. Feb. 5, 2019); Wilson v. Soto, 2016 WL 825194, at *5 (C.D. Cal. Jan. 21, 2016) (allegations of strip search in the presence of other inmates and female officers insufficient to state an Eighth Amendment claim), report and recommendation adopted, 2016 WL 827747 (C.D. Cal. Mar. 2, 2016).  Plaintiff's allegation that Defendants used demeaning language while conducting the search does not suffice.  See Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) ("Although prisoners have a right to be free from sexual abuse, whether at the hands of fellow inmates or prison guards, the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment." (citations omitted)); Oltarzewski v. Ruggerio, 830 F.2d 136, 139 (9th Cir. 1987) ("[V]erbal harassment or abuse . . . is not sufficient to state a

constitutional deprivation under 42 U.S.C. § 1983." (brackets and citations omitted)); Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996), as amended, 135 F.3d 1318 (9th Cir. 1998).  Moreover, Plaintiff's alleged confinement in a 3' by 3' cell for a brief period before or during the search does not amount to a violation of her rights.  See Hutto v. Finney, 437 U.S. 678, 685-87 (1978) (in considering whether prisoner has been deprived of his rights, courts may consider length of time he is without benefit of, *inter alia*, adequate shelter; "A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months."); Keenan, 83 F.3d at 1091-92 (affirming dismissal of Eighth Amendment "living space" claim where plaintiff alleged that the cell in which he lived was 6' by 9'); Melendez v. Hunt, 2016 WL 5156469, *11 & n.5 (E.D. Cal. Sept. 21, 2016) ("Even if placement of a claustrophobic inmate in a small cell could constitute deprivation of a basic need, a short duration of the detention [approximately one hour] weighs against such a finding." (citation omitted)).

Fourth, Plaintiff's alleged disciplinary sanctions resulting from the tray incident, such as the temporary losses of dayroom and telephone use, among other privileges, do not implicate the Eighth Amendment, as they did not deprive Plaintiff of the "minimal civilized measure of life's necessities[.]"[9]  Farmer, 511

---

[9]Nor do Plaintiff's allegations regarding her conditions of confinement rise to level of a viable Fourteenth Amendment due process violation.  The Fourteenth Amendment prohibits the state deprivation of a protected liberty interest without due process of law.  U.S. Const. amend. XIV, § 1.  In the prison context the Due Process Clause is generally implicated only when an inmate's conditions of confinement exceed the inmate's sentence in a particularly "unexpected manner," or impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995) (citations omitted); Chappell v. Mandeville, 706 F.3d 1052, 1062-65 (9th Cir. 2013) (citations omitted).  Plaintiff's allegations fall well short of meeting the foregoing standard.  See, e.g., Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003) (placement in segregated housing in and of itself typically not due process violation) (citations omitted), cert. denied, 543 U.S. 825 (2004); Anderson v. Kern, 45 F.3d 1310, 1315 (9th Cir.) ("[T]he hardship associated with administrative segregation, such as a loss of recreational and rehabilitative programs or confinement to one's cell for a lengthy

(continued...)

U.S. at 832 (citations omitted); <u>Foster v. Runnels</u>, 554 F.3d 807, 812 (9th Cir. 2009) (citing <u>Farmer</u>, 511 U.S. at 832); <u>see also</u> <u>Stinson v. Blanckensee</u>, 2019 WL 7195294, at *2 (D. Ariz. Oct. 17, 2019) (temporary loss of email and telephone privileges "does not result in the type of 'extreme deprivation' that constitutes an Eighth Amendment violation" (citing <u>Hudson</u>, 503 U.S. at 8-9; <u>Castillo v. FBOP FCI Fort Dix</u>, 221 F. App'x 172, 175-76 (3rd Cir. 2007))), <u>report and recommendation adopted</u>, 2019 WL 7194708 (D. Ariz. Dec. 26, 2019); <u>Thao v. Dickinson</u>, 2013 WL 2458413, at *7 (E.D. Cal. June 6, 2013) ("[P]laintiff's . . . Eighth Amendment claims must fail because [he] does not allege that he has been deprived of adequate shelter, food, clothing, sanitation, medical care, or personal safety. Instead, she claims that she was deprived of full privileges, such as daily phone calls and contact visits. Plaintiff has no Eighth Amendment right to full privileges, and accordingly their deprivation does not support a cognizable claim." (footnote omitted)), <u>report and recommendation adopted</u>, 2014 WL 1117256 (E.D. Cal. Mar. 19, 2014).

Accordingly, the Second Amended Complaint fails to state an Eighth Amendment claim.

### E.    Plaintiff's Challenge to Her Disciplinary Proceedings Appears to Be Barred by <u>Heck</u>

Plaintiff's Second Amended Complaint challenges the outcome of her disciplinary proceedings and seeks a restoration of the credits lost as a result of those proceedings. (<u>See</u> SAC at 10-13, 20).

Under the "favorable termination doctrine" set forth in <u>Heck v. Humphrey</u>, the district court must dismiss a state prisoner's Section 1983 claim for damages if

---

[9](...continued)
period of time, does not violate the due process clause because there is no liberty interest in remaining in the general population." (citations omitted)), <u>opinion amended on denial of reh'g</u>, 75 F.3d 448 (9th Cir. 1995). Regardless, the Second Amended Complaint does not raise a due process claim.

"judgment in favor of the plaintiff would necessarily imply the invalidity of her conviction or sentence . . . unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."  Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).  This doctrine has been extended to apply in the prison disciplinary context where the "defect complained of by [the plaintiff] would, if established, necessarily imply the invalidity of the deprivation of his good-time credits[,]" Edwards v. Balisok, 520 U.S. 641, 646 (1997); Nonnette v. Small, 316 F.3d 872, 875 (9th Cir. 2002), cert. denied, 540 U.S. 1218 (2004), and if the restoration of those credits "necessarily" would "affect the duration of time to be served." Muhammed v. Close, 540 U.S. 749, 754 (2004) (per curiam); see also Nettles v. Grounds, 830 F.3d 922, 929 n.4 (9th Cir. 2016) (en banc) ("Heck applies only to administrative determinations that 'necessarily' have an effect on 'the duration of time to be served[,]'" (citations omitted)), cert. denied, 580 U.S. 1063 (2017).

Here, to the extent that Plaintiff seeks a speedier release from custody, or a favorable determination on Plaintiff's claim(s) would necessarily accomplish this, any challenge to her disciplinary proceedings is barred, and a petition for habeas corpus would be Plaintiff's exclusive remedy.  See Nettles, 830 F.3d at 929 n.4.

## V.    ORDERS[10]

In light of the foregoing, IT IS HEREBY ORDERED that the Second Amended Complaint is dismissed with leave to amend.

///

---

[10]The Magistrate Judge's orders herein constitute non-dispositive rulings on pretrial matters.  See McKeever v. Block, 932 F.2d 795, 797-98 (9th Cir. 1991) (magistrate judges can dismiss complaints with leave to amend; dismissal of complaint with leave to amend is non-dispositive matter).  To the extent a party disagrees with such non-dispositive rulings, such party may file a motion for review by the assigned District Judge within fourteen (14) days.  See Local Rule 72-2.1.  To the extent a party believes the rulings to be dispositive, rather than non-dispositive, such party has the right to object to this Court's determination that the rulings are non-dispositive within fourteen (14) days.  A party will be foreclosed from challenging the rulings herein if such party does not seek review thereof, or object thereto.

IT IS FURTHER ORDERED that within twenty-one (21) days of the date of this Order, Plaintiff must do one of the following:

1.     File a Third Amended Complaint which cures the pleading defects set forth herein;[11] or

2.     Sign and file the attached Notice of Dismissal which will result in the voluntary dismissal of this action without prejudice; or

3.     File a Notice of Intent to Stand on Second Amended Complaint, indicating Plaintiff's intent to stand on the Second Amended Complaint despite the pleading defects set forth herein, which may result in the dismissal of this action in its entirety based upon such defects.

**Plaintiff is cautioned that Plaintiff's failure timely to file a Third Amended Complaint, a Notice of Dismissal, or a Notice of Intent to Stand on Second Amended Complaint may be deemed Plaintiff's admission that amendment is futile, and may result in the dismissal of this action with or without prejudice on the grounds set forth above, on the ground that**

///

///

---

[11]The Clerk is directed to provide Plaintiff with a Central District of California Civil Rights Complaint Form, CV-66, to facilitate Plaintiff's filing of a Third Amended Complaint if she elects to proceed in that fashion.  Any Third Amended Complaint must:  (a) be labeled "Third Amended Complaint"; (b) be complete in and of itself and not refer in any manner to prior complaints in this action – *i.e.*, it must include all claims on which Plaintiff seeks to proceed (Local Rule 15-2); (c) contain a "short and plain" statement of each of the claim(s) for relief (Fed. R. Civ. P. 8(a)); (d) make each allegation "simple, concise and direct" (Fed. R. Civ. P. 8(d)(1)); (e) set forth clearly the sequence of events giving rise to the claim(s) for relief in sequentially "numbered paragraphs, each limited as far as practicable to a single set of circumstances" (Fed. R. Civ. P. 10(b)); (f) allege specifically what the Defendant did and how that individual's conduct specifically violated Plaintiff's civil rights; (g) state the names of all Defendants in the caption and not include in the body of the Third Amended Complaint Defendants who are not also named in the caption (Fed. R. Civ. P. 10(a)); (h) be signed by Plaintiff who is proceeding pro se (Fed. R. Civ. P. 11; Local Rule 11-1); and (i) not add Defendants or claims that are not reasonably related to the claim asserted in the previous complaints.

1  **amendment is futile, for failure diligently to prosecute and/or for failure to**

2  **comply with this Order.**

3       IT IS SO ORDERED.

4

5  DATED:   April 7, 2025

6                                                    _____/s/_____

7                                            Honorable Jacqueline Chooljian
                                             UNITED STATES MAGISTRATE JUDGE
8

9  Attachments

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28